IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

JASON ERIC SWANSON,

        Plaintiff,

v.                                                              Civil action no. 1:04CV170
                                                             (Judge Broadwater)

B.A. BLEDSOE;
MR. HARRELL WATTS;
K.M. WHITE;
MR. WENDT;
P. WEIDMAN; R. McCLOUD;
and Mr. HARLEY LAPPIN,

        Defendants.

## REPORT AND RECOMMENDATION

### I. Procedural History

On August 2, 2004, the *pro se* plaintiff, Jason Eric Swanson, an inmate at FCI-Gilmore, filed a Bivens complaint against the above-named defendants for the alleged violation of his First Amendment right to free exercise of religion, Fourteenth Amendment right to due process and equal protection, and violations of the Religious Freedom Restoration Act ("RFRA") 42 U.S.C. § 2000bb-1, Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc , and 28 C.F.R. §551.90.[1] On April 25, 2005, after an initial screening, the undersigned recommended that the plaintiff's Fourteenth Amendment claims be dismissed but that his First Amendment claims, as well as those under the RFRA and RLUIPA, not be summarily dismissed and that the defendants be served with a copy of the complaint. On May 3, 2005, the plaintiff filed objections to the recommendation.

---

[1]This regulation provides that "Bureau staff shall not discriminate against inmates on the basis of race, religion, national origin, sex, disability, or political belief."

On March 16, 2006, the District Court adopted the Report and Recommendation and ordered that the defendants be served with a copy of the complaint. As well, the Court denied the plaintiff's Motion for Leave to File an Amended Complaint (Docket No. 12), which had been filed the day after the undersigned's Report and Recommendation, and his Motion to Amend/Add to Complaint (Docket No. 16), which was filed on December 4, 2005.

On August 14, 2006, the United States filed a Motion to Dismiss. On August 16, 2006, the plaintiff was issued a Roseboro Notice. On September 11, 2006, the plaintiff filed a Response in Opposition to the government's Motion to Dismiss.

## II. Issues Presented

### A. The Complaint

In his complaint, the plaintiff alleged that employees at the Federal Correctional Institution in Gilmer, West Virginia ("FCI Gilmore") restricted his constitutional and statutory rights to exercise his religion. Specifically, plaintiff alleged that prison officials refused to recognize his faith, Christian Identity, and denied his requests for scheduled time to worship in the prison's chapel to perform his religious duties, denied his requests to observe his religiously commanded Feast Days, told him he would have to study and worship with other religious services, and denied his request to have communion in his cell. The plaintiff named seven employees of the Bureau of Prisons as defendants and sought the following injunctive relief:

> The plaintiff requests this Honorable Court to grant F.B.O.P wide recognition
> of the Christian Identity faith, a weekly 1-2 hour time slot in the chapel to
> study and worship the tents (sic) of our faith without foreign or alien influences,
> to have a Christian Identity label listing for inmates in the F.B.O.P. procedure,
> for Christian Identists be allowed to celebrate their commanded Feast's and other
> Holy Days, and for the F.B.O.P. to reframe (sic) from labeling the Christian
> Identity faith as a security threat.

### II. Motion To Dismiss

On August 14, 2006, the United States, by and through the United States Attorney for the Northern District of West Virginia, filed a Motion to Dismiss this action as moot. In support of the Motion to Dismiss, the government noted that the plaintiff sought injunctive relief to compel the officials at FCI Gilmore to give formal recognition to his faith and to provide the various privileges that follow such a recognition. However, because the plaintiff was transferred from FCI Gilmore and subsequently released from the Bureau of Prisons custody, he was removed from the challenged conditions and policies that prompted his complaint. Accordingly, the government argues that this action should be dismissed as moot.

### III. Plaintiff's Objection to U.S. Motion To Dismiss

On September 11, 2006, the plaintiff filed his objections to the government's Motion to Dismiss. The plaintiff argued that he was currently on "Home Confinement Status", and was prohibited from drinking alcohol during his home confinement. Since alcohol consumption is a part of his religious faith, he argued that there was still a matter in controversy and his complaint was not moot. Furthermore, the plaintiff argued that he prayed for monetary damages in addition to injunctive relief, and therefore, it again would be premature to dismiss this matter

### III. Standard of Review

In ruling on a motion to dismiss, the Court must accept as true all well-pleaded factual allegations. Walker v. True, 399 F.w3d 315 (4th Cir. 2005). Furthermore, dismissal for failure to state a claim is properly granted where, assuming the facts alleged in the complaint to be true, and construing the allegations in the light most favorable to the plaintiff, it is clear, as a matter of law, that no relief could be granted under any set of facts that could be proved consistent with the allegations of the complaint. Hishon v. King & Spaulding, 467 U.S. 69, 73 (1984); Conley v. Gibson, 355 U.S. 41, 45-46 (1957). Additionally, a district court should construe *pro se* petitions liberally. See Haines v. Kerner,

404 U.S. 519, 520 (1972); see also Gordon v. Leeke, 574 F.2d 1147, 1151 (4th Cir. 1978) (emphasizing the liberal construction rule for *pro se* complaints raising civil rights issues).

## IV. Analysis

Article III of the constitution requires that federal courts adjudicate only cases and controversies in which the controversy is live and ongoing. Lewis v. Continental Bank Corp., 494 U.S. 472, 477-78 (1990). A case is moot when the "issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." Slade v. Hampton Roads Regional Jail, 407 F.3d 243, 249 (4th Cir. 2005) (citing Powell v. McCormack, 395 U.S. 486, 496 (1969)). In prison litigation cases, the Fourth Circuit consistently has held that when a prisoner seeks injunctive relief from allegedly unconstitutional prison conditions, a subsequent release or transfer from the challenged conditions renders the prisoner's claim moot. See e.g., Slade, 407 F.3d at 249; Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991 (prisoner's transfer to another facility rendered moot his claims for injunctive and declaratory relief); Magee v. Waters, 810 F.2d 451, 452 (4th Cir. 1987) (holding that transfer of a prisoner rendered moot his claim for injunctive relief; and Inmates v. Owens, 561 F.2d 560, 562 (4th Cir. 1977) (holding once inmate is released "there is no longer '...a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'")

Records maintained by the Federal Bureau of Prisons indicate that the plaintiff was designated to FCI Gilmore from September 30, 2003, to July 7, 2005, when he was transferred to the Federal Correctional Institution in Memphis, Tennessee ("FCI Memphis"). The plaintiff remained incarcerated at FCI Memphis until June 6, 2006, when he was furloughed and transferred to a Residential Reentry Center ("RRC"), commonly known as a half-way house. On August 3, 2006, the plaintiff was released from the RRC to complete his sentence on home confinement in Spokane, Washington. The plaintiff's

4

anticipated completion of home confinement was December 5, 2006. (Doc. 35-3).[2]

Accordingly, the plaintiff's transfer from FCI Gilmore to FCI Memphis renders moot his claims for injunctive relief. The plaintiff alleges, however, that he sought monetary damages, as well. While a prisoner transfer moots a request for declaratory and injunctive relief, it does not moot a request for monetary damages. See Taylor v. Rogers, 781 F.2d 1047, 1048 n. 1 (4th Cir. 1986). A careful review of the procedural history of this matter establishes that the plaintiff does not have a pending claim for monetary damages. The plaintiff's complaint, which was filed on August 2, 2004, sought only the injunctive relief quoted in Section II of this report. On April 26, 2005, the plaintiff filed a Motion to Amend/Correct and attached a Proposed Amended Complaint which sought $7500 in damages for the BOP's refusal to supply religious items that are unattainable except through the institution's chapel. (Doc. 12) However, the District Court's Order adopting the undersigned's initial Report and Recommendation specifically denied that Motion to Amend/Correct as well as a Motion to Amend/Correct which was filed on December 14, 2005. Therefore, the only complaint pending is the plaintiff's original complaint which clearly seeks only injunctive relief.[3]

Finally, to the extent that the plaintiff maintains that he is still in custody of the BOP and is still being deprived of his constitutional rights by virtue of BOP policies, any such continued violations were at the hands of BOP in either Memphis, Tennessee or Spokane, Washington. For a district court to assert personal jurisdiction over a nonresident defendant, two conditions must be satisfied. "First, the exercise of jurisdiction must be authorized by the long-arm statute of the forum state, and

---

[2]On December 5, 2006, the plaintiff filed a change of address notice indicating that he was currently housed in the county jail in Spokane, Washington without explanation, without a lock-up order, and without an incident report. However, the plaintiff maintained that he would be released from BOP custody on December 5, 2006.

[3]The undersigned notes that the Report and Recommendation filed on April 25, 2005, erroneously states that the plaintiff was seeking monetary damages.

second, the exercise of personal jurisdiction must also comport with Fourteenth Amendment due process requirements." Christian Sci. Bd. Of Dirs. Of the First Church of Christ v. Nolan, 259 F.3d 209, 215 (4th Cir. 2001). The West Virginia long-arm statute is contained in W.Va. Code §56-3-33(a).[4]

The Southern District of West Virginia has succinctly stated as follows regarding personal jurisdiction:

"[b]ecause the West Virginia long-arm statute is coextensive with the full reach of

---

[4]This section provides as follows:
(a) The engaging by a nonresident, or by his or her duly authorized agent, in any one or more of the acts specified in subdivisions (1) through (7) of the subsection shall be deemed equivalent to an appointment by such nonresident of the secretary of state, or his successor in office, to be his or her true and lawful attorney upon whom may be served all lawful process in any action or proceeding against him or her, in any circuit court in this state, including an action or proceeding brought by a nonresident plaintiff or plaintiffs, for a cause of action arising from or growing out of such act or acts, and the engaging in such act or acts shall be a signification of such nonresident's agreement that any such process against him or her, which is served in the manner hereinafter provided, shall be of the same legal force and validity as though such nonresident were personally served with a summons and complaint within this state:

(1) Transacting any business in this state;
(2) Contracting to supply services or things in this state;
(3) Causing tortious injury by an act or omission in this state;
(4) Causing tortious injury outside this state if he or she regularly does or solicits business, or engages in any persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state;
(5) Causing injury in this state to any person by breach of warranty expressly or impliedly made in the sale of goods outside this state when he or she might reasonably have expected such person to use, consume or be affected by the goods in this state; Provided, That he or she also regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state;
(6) Having an interest in, using or possessing real property in this state; or
(7) Contracting to insure any person, property or risk located within this state at the time of contracting.

(b) When jurisdiction over a nonresident is based solely upon the provisions of this section, only a cause of action arising from or growing out of one or more of the acts specified in subdivision (1) through (7), subsection (a) of this section may be asserted against him or her.

6

due process, it is unnecessary...to go through the normal two-step formula for determining the existence of personal jurisdiction. Rather the statutory inquiry necessarily merges with the Constitutional inquiry. In re Celotex Corp., 124 F.3d 619, 627-28 (4th Cir. 1997).

To satisfy constitutional due process, the defendant must have sufficient minimum contacts with West Virginia so that requiring it to defend its interest here would not "Offend traditional notions of fair play and substantial justice." International Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945). Those minimum contacts necessary to confer jurisdiction are limited to those activities by which a person "purposely avails itself of the privilege of conducting activities within the forum state."Hanson v. Denckla, 357 U.S. 235, 253, 78 S,Ct. 1228, 2 L.Ed.2d 1283 (1958)see also In re Celotex, 124 F.3d at 628 (the minimum contacts must be "purposeful"). This occurs where the contacts "proximately result from actions by the defendant himself that create a 'substantial connection' with the forum state," Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475, 105 S.Ct. 2174, 85 L.Ed..2d 528 (1985)(emphasis in original), or where the defendant's efforts are "purposefully directed" at the state. Id. at 476, 105 S.Ct. 2174.

Vass v. Volva Trucks North America, Inc., 304 F. Supp.2d 851, 854 (S.D. W.Va. 2004).

With regard to the actions of any BOP personnel in either Memphis, Tennessee or Spokane, Washington, the plaintiff, in his objections to the Motion to Dismiss, has failed to assert any contact by these individuals with the state of West Virginia, much less the minimum contact necessary to satisfy the Due Process Clause. Thus, the Court cannot exercise personal jurisdiction over these individuals as any action they took appears to have occurred solely in Tennessee and Washington and not anywhere in West Virginia, and there is no indication that they had any contact whatsoever with the State of West Virginia. Accordingly, the original complaint cannot survive in this jurisdiction based on any alleged wrong doing that took place by the BOP after the plaintiff's transfer from FCI Gilmore.

## V. RECOMMENDATION

In consideration of the foregoing, it is the undersigned's recommendation that the Motion to Dismiss (Doc. 35) be GRANTED and the plaintiff's Bivens complaint (Doc. 1) be **DISMISSED AS**

7

**MOOT**.

Within ten (10) days after being served with a copy of this recommendation, any party may file with the Clerk of the Court written objections identifying the portions of the recommendation to which objections are made, and the basis for such objections. A copy of such objections should also be submitted to the Honorable W. Craig Broadwater, United States District Judge. Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such Recommendation. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk of the Court is directed to provide a copy of this Report and Recommendation to the *pro se* plaintiff and any counsel of record as provided in the Administrative Procedures for Electronic Case Filing in the United States District Court for the Northern District of West Virginia.

Dated: December 13, 2006

/s *John S. Kaull*
JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE